No. 64,358 ■

CITY OF LIBERAL, KANSAS, *Appellant,* v. SEWARD COUNTY, KANSAS, *Appellee.*

(802 P.2d 568)

Opinion filed December 7, 1990.

*Rex A. Sharp*, of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for appellant.

*Tom R. Smith*, of Smith & Miles, Chartered, of Liberal, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by the City of Liberal (City) from a judgment of the Shawnee County District Court affirming an order of the Board of Tax Appeals (BOTA), which denied exemption of royalty interest owned by the City from ad valorem taxation. We granted the appellant's petition for review.

The facts are undisputed. After World War II, the United States conveyed a large tract of land to the City, which is now used as the municipal airport for the City. The enabling deed to the City required all income from the land be used for airport maintenance. Part of this land surrounding the airport has been

developed into an industrial park. A portion of the undeveloped real estate not used for airport hangars, runways, etc., was leased in 1983 for oil and gas development purposes. The land has been leased to an oil and gas producer, and presently wells are operating on the property. At the time of the execution of the lease, the City reserved a royalty interest in the leased property and receives royalty income for the gas being produced from the land. It is this royalty interest that the City seeks to exempt from taxation.

The royalty income is used by the City exclusively for the maintenance, operation, and improvement of the airport. At the hearing before BOTA, the Board was informed that the income from the property was being used for airport maintenance, which by law could be supported by taxes or by bonds. The funds were deposited in the airport fund, which was also supported by a city-wide 2.5 mill tax levy for airport maintenance.

BOTA found the facts in *City of Arkansas City v. Board of County Commissioners*, 197 Kan. 728, 420 P.2d 1016 (1966), nearly identical to the present case and concluded that the leases were not a governmental function but were taxable as in a trade or business. BOTA concluded that the lease existed purely for the production of revenue, and the only participation of the City was to receive payments. BOTA concluded that disposition of the proceeds from the leases was not material to the exemption question. Because the operation of the lease was not essential to the operation of the airport, BOTA concluded that it was not used for a governmental or proprietary function but, instead, was used solely to generate income, and its absence would not affect airport operations.

Here, the decision by the district court upheld the conclusion by BOTA. The district court, however, did not discuss *City of Arkansas City* but, instead, relied upon *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988), in concluding that the leased properties were not in any way used for a proprietary function of the government. The fact that the airport authority received rental income from the properties did not constitute use within the meaning of the statute. The district court found the royalty payments received by the City similar to the rent received by

the airport's leased properties and concluded that the City was not entitled to an exemption from ad valorem taxation.

The Court of Appeals reluctantly affirmed the district court because it found the facts here indistinguishable from those in *City of Arkansas City*. The court also found K.S.A. 79-201a *Second* to be indistinguishable from the 1963 amendment to G.S. 1949, 79-201, which was the basis for the decision in *City of Arkansas City*. The Court of Appeals noted: "While we might not agree with the decision announced in *City of Arkansas City*, we are bound to follow it. It is controlling in this case; therefore, we have no choice but to affirm."

The sole issue before us is whether the City of Liberal's royalty interest from oil and gas leases is exempt from ad valorem taxation. BOTA concluded the royalty interest was not; the district court and the Court of Appeals agreed.

We first note that, on appeal, orders of BOTA are subject to judicial review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* See K.S.A. 1989 Supp. 74-2426(c). Under that Act, the court's scope of review is controlled by K.S.A. 77-621, which this court recognizes as somewhat broader than the traditional three-pronged scope of review set forth in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 (1968). The applicable provision of the scope of review relevant here is set forth at K.S.A. 77-621(c)(4), which states that the court shall grant review only if BOTA "has erroneously interpreted or applied the law." The burden of proving the invalidity of the agency action is on the party asserting invalidity, which here would be the City. K.S.A. 77-621(a)(1). In determining whether the invalidity of the agency action has been established, "due account shall be taken by the court of the rule of harmless error." K.S.A. 77-621(d).

The City asserts that it is exempt from paying ad valorem taxes on the royalty interest in the oil and gas leases on the real estate connected with the airport based upon the statutory exemption of K.S.A. 79-201a, which provides, in relevant part:

"The following described property, to the extent herein specified, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .
"*Second.* All property used exclusively by the state or any municipality or political subdivision of the state. All property owned . . . by the state or any municipality or political subdivision of the state which is used or is to be used for any governmental or proprietary function and for which bonds may be issued or taxes levied to finance the same, shall be considered to be 'used exclusively' by the state, municipality or political subdivision for the purposes of this section."

The City also contends that the royalty interest in the oil and gas leases is exempt under Kan. Const. art. 11, § 1(b)(2), which provides that "[a]ll property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempted from property taxation."

The interest in question here is a royalty interest, which is "the compensation paid to the owner of the mineral interest in land where gas, oil, or other inorganic substance is produced and usually consists of one-eighth or other agreed share of the financial proceeds thereof." *Rathbun v. Williams*, 154 Kan. 601, 603, 121 P.2d 243 (1942). An owner of a mineral interest may sell and assign a royalty interest. An assignee of a royalty interest may, in turn, sell it to another assignee. Thus, royalty interests are considered personal property and are taxed as personal property. 154 Kan. at 604.

Basic rules and legal principles concerning the exemption of property from ad valorem taxes were summarized by this court in *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs*, 245 Kan. 301, 304-05, 777 P.2d 843 (1989), as follows:

"Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 645, 693 P.2d 1187 (1985); [citation omitted]. Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. *T-Bone Feeders, Inc. v. Martin*, 236 Kan. at 645; *City of Arkansas City v. Board of County Commissioners*, 197 Kan. 728, Syl. ¶ 1, 420 P.2d 1016 (1966); [citations omitted]. Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption. *In re Application of Int'l Bhd. of Boilermakers*, 242 Kan. 302, 305, 747 P.2d 781 (1987); [citations omitted]. Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption, and he must bring himself clearly within the exemption. *Meadowlark Hill, Inc.*

*v. Kearns*, 211 Kan. 35, 41, 505 P.2d 1127 (1973); [citation omitted]. Strict construction, however, does not warrant unreasonable construction. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, Syl. ¶ 2 [, 473 P.2d 1 (1970)]."

As previously indicated, the decision of the district court upholding BOTA's denial of the exemption in this case relied upon *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80. The district court found the royalty payments made to the City of Liberal similar to the rental income received by the Salina Airport Authority. The district court concluded that, in both cases, the fact that income was being generated for the operation and maintenance of the airport did not constitute use within the meaning of the tax exemption statute, and therefore an exemption from ad valorem taxation was not appropriate.

In reaching its decision, the Court of Appeals discussed *Salina Airport Authority* merely to support its statement that the exclusive use of property sought to be exempted from taxation is the relevant issue, not the source of the property or the character of the owner. The decision by the Court of Appeals is not based upon *Salina Airport Authority* but, instead, relies upon this court's decision in *City of Arkansas City*, 197 Kan. 728. The Court of Appeals correctly points out that the facts of *City of Arkansas City* are almost identical to the facts in this case. In *City of Arkansas City*, the United States conveyed land located in Sumner County to Arkansas City and the City of Winfield as tenants in common after World War II. 197 Kan. 728. In 1952, the cities executed oil and gas leases concerning the land and received a one-eighth royalty interest. The money received was commingled with other municipal revenues and used for numerous purposes with the consent of the United States. 197 Kan. at 729. At the time the leases were executed, the current statutes exempted all property belonging exclusively to any city or town. At that time, the test of whether real estate was exempt from taxation was ownership, not use. 197 Kan. at 729 (citing *City of Harper v. Fink*, 148 Kan. 278, 80 P.2d 1080 [1938]). The statutes were amended in 1963, however, to require that the property belong to and be used exclusively by the state or municipality. 197 Kan. at 729. Pursuant to this change in statute, Sumner

County placed the one-eighth landowner's royalty interest on the tax rolls. 197 Kan. at 729-30.

The sole question addressed in *City of Arkansas City* was whether the act of the cities in leasing the land for oil and gas purposes and receiving royalty payments attributable to their one-eighth landowner's royalty interest constituted leasing, loaning, or otherwise making such property available to any person, firm, or corporation for use in any trade, business, or commercial enterprise. The court concluded that the change in the statutes made use, not ownership, the important factor in determining whether an exemption existed. The court concluded: "By virtue of the oil and gas leases executed by plaintiff cities, their interest in the land was made available to the lessee for *use* in a trade, business or commercial enterprise and, under the statute, it thereby lost its exemption from taxation." 197 Kan. at 730.

In reaching its decision in this case, the Court of Appeals concluded that G.S. 1949, 79-201, as amended in 1963, is indistinguishable from the statute which must be interpreted in this case. The 1963 amendment to G.S. 1949, 79-201 provided as follows:

"That the property described in this section, . . . shall be exempt from taxation: . . .

. . . .

"*Sixth.* All property belonging to and used exclusively by the state or any municipality or political subdivision of the state, except lands bid off for counties or cities at tax sales: *Provided,* That if any of such property is leased, loaned or otherwise made available to any person, firm or corporation for use in any trade, business or commercial enterprise, such property so leased, loaned or otherwise made available shall not be exempt from taxation . . . ." L. 1963, ch. 456, § 1."

As previously indicated, the Court of Appeals concluded that it had no choice but to follow the decision in *City of Arkansas City.*

Neither the parties nor the Court of Appeals discussed the recent decision by this court in *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs,* 245 Kan. 301. The Court of Appeals does mention the case for the principle that whether specific property is exempt from ad valorem taxation pursuant to K.S.A. 79-201a is a question of law if the facts are undisputed. Although the facts in *Tri-County* are not identical to those of the

present case, the issues are very similar. As in *Salina Airport Authority*, the issue in *Tri-County* involved a question of whether the leasing of parcels of real estate to private entities for nonaviation, commercial purposes constituted a "governmental or proprietary function" for purposes of K.S.A. 79-201a *Second.*

In *Tri-County*, the City of Herington acquired a former Army air base from the United States government in 1948. The city paid ad valorem taxes on the property while it was under city ownership. The city operated the property as an airport and entered into several leases with private entities for the use of various parcels of property on the old air base for a variety of purposes. In 1978, the city created the Tri-County Public Airport Authority, which sought an ad valorem tax exemption pursuant to K.S.A. 1988 Supp. 79-201a because the primary function of the property was to operate as a municipal airport with several businesses operating in the industrial park. This court stated that the issue in the case was "whether the ownership and use of property solely for the production of revenue is a 'governmental or proprietary function' within the meaning of the statute." 245 Kan. at 308. We noted that Tri-County did not contend that it performed a governmental function when it leased the property to private entities for commercial purposes totally unrelated to any airport activity but argued that leasing of the property to generate revenue for airport operations constituted a proprietary function with a public purpose. Morris County countered that no public function of government was being carried out on land leased to private entities, and therefore the property did not meet the statutory definition of "used exclusively." Instead, the county argued that only a use that was directly necessary to the operation of the airport constituted a governmental or proprietary use with a public purpose as contemplated by 79-201a *Second.* 245 Kan. at 308.

This court noted that the same question had been addressed by the Kansas Court of Appeals in *Salina Airport Authority*. We rejected Tri-County's attempt to distinguish *Salina Airport Authority* on the facts. We also recognized that the decision in *Salina Airport Authority* was consistent with the majority rule of other jurisdictions where ownership of property by an exempt body is not the sole test of exemption. 245 Kan. at 309. We found the

decision in *Salina Airport Authority* to be consistent with the longstanding case law requiring strict construction of statutory tax exemptions and concluded:

"Exclusive use as defined by the statute requires actual use of the property for a public purpose. The leasing of portions of the Tri-County property solely for the purpose of generating revenue, while authorized by the Surplus Property and Public Airport Authority Act, does not constitute exclusive use for a 'governmental or proprietary function' of the airport authority even though the particular use of the leased property may be proprietary in nature. The use contemplated by the statute and our prior cases is one directly connected with an appropriate function of government. As stated by the BOTA, 'The use must be in the nature of a public use even though proprietary in nature.' Ownership of property solely for the purpose of producing revenue which may ultimately be used to finance a governmental function, in this case the airport facility, is not exclusive use as defined by K.S.A. 1988 Supp. 79-201a *Second.*" 245 Kan. at 310.

The court noted that the 1989 session of the legislature, presumably in response to *Salina Airport Authority*, amended K.S.A. 27-319 to exempt the Salina Airport Authority from payment of ad valorem taxes. The court pointed out that if the legislature had intended this amendment to apply to other airport authorities, then the statute could easily have been amended to indicate this intent.

Finally, in *Tri-County* this court emphasized that its decision was based upon the facts of the case where the property not exempt from taxation "was being leased to private enterprise for businesses which have no direct or necessary relationship to the operation of a public airport." 245 Kan. at 311. We made no determination about the taxability of airport property that is "leased to airport-related businesses necessary or advisable in the proper operation of an airport facility." 245 Kan. at 311.

Here, the City argues that this court should not be bound by or, if necessary, should overrule *City of Arkansas City* because the court there did not focus on the difference between real estate and royalty interest.

The City also argues that the royalty interest here is exempt under the constitution because the constitutional provision refers to "all property," which would include the royalty interest at issue in this case, and because the income from the royalty interest is "used exclusively for municipal purposes." The City notes

that under the constitutional provision, the ownership of the royalty interest does not matter but, instead, the use must be for a municipal purpose. Because the City uses the money received under the royalty interest exclusively for the maintenance of the municipal airport, it argues that its use for a municipal purpose is established.

The City further argues that it is exempt under the first sentence of K.S.A. 79-201a *Second* because the property is used exclusively by the municipality since the funds are invested in the airport account and used exclusively for maintenance and operation of the airport. The City also argues that it qualifies for exemption under the second sentence of K.S.A. 79-201a *Second* because it meets the three tests set forth in that sentence: First, the royalty interest here is property that is owned by the municipality. Second, the property is used for a governmental or proprietary function because the proceeds fund maintenance of the municipal airport. Third, the maintenance fund, where the royalty interest proceeds are deposited, can be, and in fact is, supported by a tax levy and bonds. Therefore, the City argues that it qualifies for the exemption under both the constitution and the statute.

The County asserts that the existence of the oil and gas lease takes away the City's exemption because the property is no longer used exclusively for a governmental or proprietary purpose. The County argues that the lease is not in any way used for a proprietary function of the government and is used solely for oil and gas exploration to generate a profit to the leaseholder. Although a portion of that profit does go to the City as a royalty payment, the lease itself carries out no public function of government.

The arguments in *Tri-County* are similar, if not identical, to those being presented by the parties here. The only different argument is the attempt to distinguish income acquired by rental of real estate from royalty income from an oil and gas lease. The problem with the distinction is that the statute refers to "all property," both in exempting that exclusively used by the municipality as well as in excluding that which is owned by the State or municipality and used for a governmental or proprietary function, and that for which bonds may be issued or taxes levied to finance the same. No distinction is made between income

received from the rental of real estate as opposed to royalties received from an oil and gas lease. Although the City's arguments are based upon this distinction, prior decisions, and particularly the analysis of this court in *Tri-County*, indicate that this distinction is insignificant and income should not be treated differently based upon whether it is from rental of real estate or royalties from an oil and gas lease.

The question here, as in *Tri-County*, is whether the ownership and use of property solely for the production of revenue is a "governmental or proprietary function" within the meaning of the statute. 245 Kan. at 308. The analysis by this court in *Tri-County* is applicable here. The court concluded that exclusive use as defined by the statute requires actual use of the property for a public purpose. Even though the use of the leased property here was proprietary in nature, the use was not one directly connected with an appropriate function of the government.

We agree with the Court of Appeals that the facts in *City of Arkansas City* are indistinguishable from the facts in the present case. We find the decision in *City of Arkansas City* and our analysis of *Tri-County* to be controlling here. We therefore conclude that the City of Liberal is not entitled to an exemption under K.S.A. 79-201a *Second* or Article 11, § 1(b)(2) of the Kansas Constitution.

The judgments of the Court of Appeals and the district court are affirmed.

ABBOTT, J., not participating.