(925 P.2d 440)

No. 74,327

LARIO ENTERPRISES, INC. and CITY OF TOPEKA, KANSAS, *Appellees*, v. STATE BOARD OF TAX APPEALS and TIMOTHY L. KENNEDY, SHAWNEE COUNTY APPRAISER, *Defendants*, and U.S.D. 450, *Appellant*.

U.S.D. 450 SHAWNEE HEIGHTS, SHAWNEE COUNTY, KANSAS, *Appellant*, v. CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, *Appellee*.

Opinion filed September 27, 1996.

*James S. Willard* and *Jack A. Quinlan*, of Scott, Quinlan & Hecht, of Topeka, for appellant U.S.D. 450.

*Robert J. O'Connor*, of Morrison & Hecker L.L.P., of Wichita, for appellees Lario Enterprises, Inc., and the City of Topeka.

Before GERNON, P.J., ROYSE, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

ROYSE, J.: This appeal arises out of an application filed by the City of Topeka (City), seeking a property tax exemption for Heartland Park Topeka (HPT). The Board of Tax Appeals (BOTA) determined that HPT qualifies for a tax exemption. BOTA concluded part of the property was exempt as of January 12, 1988, and the balance was entitled to an exemption effective in 1991. The parties sought judicial review of BOTA's decision. The district court affirmed BOTA's determination that HPT was entitled to a property tax exemption, but the court concluded all property became tax exempt as of January 12, 1988. U.S.D. 450, Shawnee Heights, an intervenor in the BOTA proceeding, appeals from the decision of the district court.

Highly summarized, the pertinent facts are as follows: HPT is a race track and motor sports facility. The principal players in HPT are the City and Lario Enterprises (Lario). Under the terms of a Development and Management Agreement, Lario contracted to acquire title to the real estate for the planned race track and to deed that land to the City. The title transferred to the City was an estate for 23 years. Title reverts to Lario or a related company at the end of the 23-year term. The parties' arrangements for the operation of HPT after the City's 23-year term expires are not pertinent to this appeal.

In consideration of its interest in the real estate, the City agreed to issue and did issue $7.5 million in general obligation bonds. The bond proceeds were used to improve land transferred by Lario to the City in 1988.

The Development and Management Agreement also designated Heartland Park Corporation (HPC) as the corporate entity responsible for operation and management of the racing facility. HPC is a subsidiary of Lario. HPC operates HPT on behalf of the City. HPC has established a fee schedule for use of the property. HPC receives as compensation for its services any revenue from operations which exceeds expenses.

The City filed an application for property tax exemption for HPT in 1991. The City sought an exemption for property owned by the City during the City's period of ownership. After reviewing voluminous documents and testimony from a number of witnesses,

BOTA found the property was exempt from the date it was transferred to the City. BOTA entered a detailed order and an order on rehearing. The findings and conclusions of BOTA most important to this appeal are as follows:

1. HPT property is owned by the City.
2. HPT is used as a race track and motor sports facility. Its single purpose and use is as a recreational facility, which is a recognized governmental or proprietary function.
3. The City issued bonds to finance a portion of the property, and taxes were levied to repay those bonds. Additional taxes may be levied to operate HPT.
4. The City contracted for HPC to operate and manage HPT on behalf of the City.

### STANDARD OF REVIEW

K.S.A. 74-2426(c) provides that orders from BOTA are subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The burden of proving invalidity of agency action is on the party asserting invalidity. K.S.A. 77-621(a)(1). K.S.A. 77-621(c) provides that the court may grant relief only when it has made certain determinations, including a determination that the agency erroneously interpreted or applied the law. *In re Tax Appeal of Morton Thiokol, Inc.,* 254 Kan. 23, 26, 864 P.2d 1175 (1993).

The legal principles applicable to questions of taxation and exemption are well settled. Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 645, 693 P.2d 1187 (1985). Taxation is the rule, and exemption from taxation is the exception under the Kansas Constitution and statutes. 236 Kan. at 645. Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against the exemption. *In re Application of Int'l Bhd. of Boilermakers,* 242 Kan. 302, 305, 747 P.2d 781 (1987). Strict construction, however, does not mean unreasonable construction. *Trustees of The United Methodist Church v. Cogswell,* 205 Kan. 847, Syl. ¶ 2, 473 P.2d 1 (1970).

In addition to the constitutional exemption, the legislature may provide statutory exemptions from property taxation. *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs*, 245 Kan. 301, 305, 777 P.2d 843 (1989). The statutory exemptions may be broader than the constitutional ones. The legislature is the judge of what exemptions are in the public interest and will be conducive to the public welfare. *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 579, 701 P.2d 1314 (1985).

BOTA is a specialized agency that exists to decide issues concerning taxation. Its decisions should be given great credence and deference when it is acting in its area of expertise. *Hixon v. Lario Enterprises, Inc.*, 257 Kan. 377, 378-79, 892 P.2d 507 (1995). The final construction of a statute, however, rests with the courts. Although the courts will give consideration and weight to an administrative agency's interpretation of a statute, they will not adhere to that interpretation when the statute is clear and the agency's ruling is incorrect. *In re Tax Exemption Application of City of Wichita*, 255 Kan. 838, 842, 877 P.2d 437 (1994). See *In re Appeal of Topeka SMSA Ltd. Partnership*, 260 Kan. 154, 162, 917 P.2d 827 (1996).

On appeal, U.S.D. 450 argues BOTA and the district court erred in determining HPT is entitled to a tax exemption. In addition, U.S.D. 450 argues the district court erred in determining the exemption applied to all property in question as of January 12, 1988. These arguments ask this court to determine that BOTA and the district court erroneously interpreted or applied the law.

Article 11, § 1(b)(2) of the Kansas Constitution provides: "All property used exclusively for state, county, [and] municipal . . . purposes . . . shall be exempted from property taxation." A slightly different exemption is set forth in K.S.A. 79-201a *Second*, which exempts from property taxes "[a]ll property used exclusively by the state or any municipality or political subdivision of the state." The second sentence of 79-201a *Second* provides a three-part test which may be used to prove property satisfies the "used exclusively" requirement for the statutory exemption:

"All property owned . . . or operated by the state or any municipality . . . which is used or is to be used for any governmental or proprietary function

and for which bonds may be issued or taxes levied to finance the same, shall be considered to be 'used exclusively' by the state, municipality or political subdivision for purpose of this section."

BOTA analyzed the exemption under 79-201a *Second* by applying this three-part test. BOTA concluded: (1) HPT is owned by the City; (2) the City has opted to operate HPT through an agreement with Lario; (3) HPT is used as a recreational facility, a recognized governmental or proprietary function; and (4) the City issued bonds to finance a portion of the property, taxes were levied to repay those bonds, and additional taxes may be levied.

## PROPERTY "OWNED" BY THE CITY

U.S.D. 450 argues BOTA erred by concluding the City satisfied the second sentence of K.S.A. 79-201a *Second*. U.S.D. 450 contends HPT is not owned or operated by the City and the property is not used for a governmental or proprietary purpose. U.S.D. 450 has not argued that HPT fails the bonds/taxes part of the test.

U.S.D. 450 first claims HPT is not owned by the City, because the City holds only "bare legal title" and lacks sufficient incidents of ownership. U.S.D. 450 further claims that a limited interest in the property, a term of 23 years, is insufficient ownership. U.S.D. 450 cites no direct authority for its assertions that "bare legal title" or a term of years do not amount to ownership under 79-201a *Second*. Instead, U.S.D. 450 cites *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988), a case which focuses on "use," not "ownership," and which does not construe the second sentence of 79-201a *Second*. See *City of Liberal v. Seward County*, 247 Kan. 609, 615, 802 P.2d 568 (1990); *Tri-County*, 245 Kan. at 308-10.

U.S.D. 450 attempts to support its "bare legal title" argument by quoting from cases which say ownership is not the sole test of exemption. *City of Liberal*, 247 Kan. at 615; *Tri-County*, 245 Kan. at 309. Those cases do not hold that legal title is insufficient to comply with the ownership test. They merely indicate an applicant must further satisfy the use test for exemption. See *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 42, 542 P.2d 278 (1975).

The City's compliance with the use test is discussed later in this opinion.

In this case BOTA relied on the fact that Lario had transferred title to the City, as well as the fact that the parties intended for the City to retain ownership for 23 years, in concluding that "ownership" had been established. The district court agreed the City had established ownership, noting the record also showed the City retained significant incidents of ownership: The City bears the burden of numerous acquisition costs; bonds issued by the City were used to finance improvements on the property; the City by contract has obligated Lario to pay specified expenses from the revenues it collects; the City may possess and control the property should Lario default; the City and Lario retain decision-making authority commensurate with their respective interests in HPT; and the City obtains an ownership interest in personal property and improvements placed on its property.

The conclusion by BOTA and the district court that HPT passes the ownership test of 79-201a *Second* is consistent with the construction given by the Supreme Court to a predecessor statute in *City of Harper v. Fink*, 148 Kan. 278, 80 P.2d 1080 (1938). In that case, the City of Harper sought a tax exemption for property it received under the terms of a will. The City claimed the exemption on the grounds that the property "belonged to" the City, as required by the exemption statutes then in effect. Noting that title to the property vested in the City under the will, the Supreme Court concluded the property was exempt. Even though the will required the City to devote all income from the use or sale of the property for cemetery purposes, the property belonged to the City of Harper for purposes of the exemption statute. 148 Kan. at 281-82.

U.S.D. 450 relies on *In re Application of SBA for Ad Valorem Tax Exemption*, 14 Kan. App. 2d 600, 797 P.2d 879 (1990), to support its contention that HPT is not owned by the City. U.S.D. 450's reliance on that case is misplaced. SBA sought an exemption from taxes accruing during the redemption period on real estate it had purchased at a sheriff's sale. On appeal, this court determined SBA was not entitled to an exemption under 79-201a. This court

reasoned that a purchaser at a sheriff's sale receives equitable title to the property. "The legal title remains with the debtor until the sheriff's deed is executed." 14 Kan. App. 2d at 605. Because SBA did not receive legal title or ownership until the passage of the redemption period, the property was not tax exempt during the redemption period. 14 Kan. App. 2d at 606. *Application of SBA* does not conclude that a party holding legal title fails the ownership test of 79-201a *Second*.

The nature of an estate for years was addressed in *Kimberlin v. Hicks,* 150 Kan. 449, 94 P.2d 335 (1939). The Supreme Court defined an estate for years as "an estate, the duration of which is fixed in units of a year or multiples or divisions thereof." 150 Kan. at 452. Unless restricted by the terms of the instrument creating the estate, an estate for years may be transferred or devised. The Supreme Court characterized an estate for years as "a valuable property interest." 150 Kan. at 453.

The Supreme Court's decision in *City of Liberal*, 247 Kan. 609, provides some guidance on the question of whether a limited ownership interest may qualify for a tax exemption under 79-201a *Second*. In that case, the City of Liberal sought a tax exemption for a royalty interest, defined as " 'the compensation paid to the owner of the mineral interest in land where gas, oil, or other inorganic substance is produced and usually consists of one-eighth or other agreed share of the financial proceeds thereof.' " 247 Kan. at 612. Noting that such an interest may be sold or assigned, the court explained that royalty interests are considered personal property and taxed as personal property. The Supreme Court further commented that the statutory exemption refers to "all property." 247 Kan. at 617. The Supreme Court concluded the royalty interest failed the requirements for a tax exemption, not because it was not owned by the City, but because it was not used for a governmental or proprietary function. 247 Kan. at 618. See also *City of Arkansas City v. Board of County Commissioners*, 197 Kan. 728, 420 P.2d 1016 (1966) (exemption denied because royalty interests failed the use test).

Finally, the rule of strict construction means that ordinary words are to be given their ordinary meaning. A statute should not be

read so as to add or subtract from that which is found therein. *In re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, Syl. ¶ 4, 909 P.2d 673 (1995); *State v. Pray*, 5 Kan. App. 2d 173, 174, 613 P.2d 400 (1980). The legislature, in judging what exemptions are in the public interest, has not placed qualifications on "ownership," as used in 79-201a *Second*. It is not the function of this court to add such qualifications.

For all the foregoing reasons, we conclude BOTA and the district court did not err in concluding HPT is owned by the City.

## PROPERTY "OPERATED" BY THE CITY

In addition to its claim that the City does not own HPT, U.S.D. 450 takes the position that the property is not operated by the City for purposes of 79-201a *Second*. The three-part test included in 79-201a *Second* applies to property owned *or* operated by the governmental entity. Because BOTA relied on both alternatives, we will address this argument even though we have already concluded HPT satisfies the ownership test. U.S.D. 450 bases this argument in large part on its assumption that the City holds a "meaningless term of years" in the property, an assumption we have rejected. U.S.D. 450 further contends it is Lario which operates HPT, not the City. This contention overlooks the fact that Lario's activities at HPT must comply with the terms of its contract with the City.

The basic premise underlying U.S.D. 450's claim that the City does not operate HPT is that the City may not rely on a contractual relationship to manage the operations of the facility. As noted by BOTA, however, nothing in the statute requires the City to use City employees in order to qualify for the tax exemption. The fact that the City has opted to operate HPT through a management agreement with Lario does not mean the City does not operate HPT. See *Bailey v. City of Topeka*, 97 Kan. 327, 154 Pac. 1014 (1916) (city's grants of concessions to individuals, rather than directly providing conveniences to park patrons through its employees, are consistent with the use of property for public purposes).

U.S.D. 450 cites *In re Tax Exemption Application of City of Wichita*, 255 Kan. 838, in support of its claim that the City does not operate HPT. That opinion does not focus on the "owned or

operated" test under 79-201a *Second.* Instead, the Supreme Court concluded the City of Wichita made no use of the property which it acquired through a forfeiture proceeding:

"The determination of tax exemption under the statute depends to a large extent upon the status of the property in the hands of the owner and whether it actually is being used for a public purpose. The property in question was lying dormant during the pertinent time. It was not being used by anyone and was held for sale with proceeds committed to associated expenses and future governmental purposes. This does not constitute actual use as contemplated under K.S.A. 79-201a." 255 Kan. at 847.

*Application of City of Wichita* is distinguishable on its facts. It does not require us to reverse BOTA's conclusion that the City operated HPT.

## PROPERTY USED FOR A "GOVERNMENTAL FUNCTION"

U.S.D. 450 further argues HPT is not used for a governmental function. U.S.D. 450 does not dispute that HPT is a recreational facility or that a recreational facility is a governmental function. Instead, U.S.D. 450 seems to take the position that participation by HPC in the operation of HPT, and the fact the HPC receives compensation for its services under the management agreement, preclude satisfaction of the governmental function test.

U.S.D. 450 cites *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, as support for its argument. That case concluded that certain property owned by the Salina Airport Authority, but leased to private companies, was not exempt from taxation:

"The mere fact that the Authority receives rental income does not constitute 'use' within the meaning of K.S.A. 1987 Supp. 79-201a *Second.* Such a construction would be inconsistent with the clear and unequivocal language of the statute. There is no public function of government being carried out upon the leased properties. To decide otherwise would compel a conclusion that the legislature intended all property owned by the State, its subdivisions, and municipalities leased to private corporations for nongovernmental purposes to be exempt from taxation. This would not only be inconsistent with the statute; it would be unconstitutional." 13 Kan. App. 2d at 84.

Both BOTA and the district court determined that *Salina Airport Authority* is distinguishable on its facts. We agree. First, this

case does not involve a lease. Instead, the City has hired HPC under a contract to run its recreational facility. As BOTA commented, the mere fact that a private enterprise is connected with a particular municipal property does not change the governmental purpose of the property. Second, *Salina Airport Authority* involved actual physical use of the property by the lessee for a private purpose, separate from the Airport Authority's governmental purpose. In this case, however, BOTA found that the "single purpose and use" of HPT is "as a recreational facility." A governmental function is being carried out on the property. See McKenzie, *Survey of Kansas Law: Taxation*, 41 Kan. L. Rev. 727, 740-41 (1993). Finally, several of the cases relied on in *Salina Airport Authority*, 13 Kan. App. 2d 84-85, emphasize that the properties were not available for public use. In contrast, BOTA found that any member of the public may choose to participate in events at HPT.

U.S.D. 450 argues that one provision of the agreement between the City and Lario allows Lario to lease for $1 any portion of the premises it wished for purely private purposes. Without citation to the record, U.S.D. 450 says this has occurred on at least one occasion. Factual statements in a party's brief are to be keyed to the record; material without such reference is presumed to be without support in the record. *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, Syl. ¶ 2, 836 P.2d 1193 (1992).

U.S.D. 450's argument merely shows there is a possibility that sometime in the future a portion of the property might be put to private use which would not meet the requirements for a property exemption under 79-201a *Second*. This possibility does not justify the conclusion that BOTA erred in determining the property is currently used for a governmental function.

We have carefully considered U.S.D. 450's arguments and authorities, including decisions from other jurisdictions. We conclude, however, that BOTA and the district court did not err in deciding that HPT qualifies for a tax exemption under the three-part test of the second sentence of 79-201a *Second*. In light of this conclusion, we need not address the parties' arguments regarding the application of the first sentence of 79-201a *Second* or the constitutional exemption in Article 11, § 1(b)(2).

## EFFECTIVE DATE OF THE EXEMPTION

BOTA determined part of the HPT property was exempt as of January 12, 1988, and the balance was entitled to an exemption effective in 1991. In its order on rehearing, BOTA explained the City did not own or operate the property until the property was transferred to the City. Thus, property transferred to the City in 1988 satisfied the exemption requirements and was tax exempt effective in 1988. Property transferred at later times became tax exempt on those later dates of transfer.

On review, the district court concluded all HPT property became exempt as of January 12, 1988. The district court stated BOTA needed to focus on use, not ownership, and characterized BOTA's ruling as creating a "piecemeal type exemption."

U.S.D. 450 argues the district court erred in modifying the exemption effective dates established by BOTA. We agree. While ownership is not the sole test for determining whether property is tax exempt, it is certainly one of the tests which BOTA correctly used in applying 79-201a *Second* to decide whether HPT was exempt. It is also an appropriate consideration in deciding when the exemption takes effect.

BOTA noted the City could not exercise control over, *i.e.*, "operate," property which had not been transferred to it. The district court disagreed, adopting without explanation Lario's contention that the City did in fact operate the property prior to transfer. On appeal, Lario contends it was engaged in placing race track improvements on the property. Lario was obligated under the Management Agreement, however, only during its "Term," which begins under the contract when title to the property vests in the City.

BOTA was not bound by the parties' attempts to backdate deeds to some of the property. Any piecemeal quality in the tax exemption is simply a function of the manner in which the parties arranged the project.

BOTA's determination of the effective dates for HPT's tax exemption are supported by the record and consistent with 79-201a *Second*. The district court erred in modifying those dates.

Affirmed in part and reversed in part.