Gunkle v. Killingsworth.

No. 26,023.

HULDA GUNKLE et al., *Appellees,* v. O. V. KILLINGSWORTH, as
County Treasurer of Lyon County, *Appellant.*

SYLLABUS BY THE COURT.

BUILDING AND LOAN ASSOCIATIONS—*Rural-credit Loans—Exemption from Tax-
ation—Constitutionality.* Under chapter 96 of the Laws of 1915 (R. S. 17-
1052, 17-1058), building and loan associations are authorized to issue rural-
credit shares and invest the proceeds in rural-credit loans, and the legisla-
ture by the act provided and intended that such shares should be exempt
from taxation. *Held,* that the provision for exemption was within the con-
stitutional power of the legislature.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed
March 7, 1925. Affirmed.

*Roland Boynton,* of Emporia, for the appellant.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, and
*W. S. Kretsinger,* of Emporia, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The question involved in this controversy is
whether rural-credit shares issued by building and loan associations
are exempt from taxation.

The plaintiffs are the owners of rural-credit shares of the Mutual
Building and Loan Association to the value of $3,500, and of like
shares in the Citizens Building and Loan Association of the value
of $4,000. In the assessment of 1924 the assessor entered these
shares upon the assessment rolls for taxation. The plaintiffs made
an application to the board of county commissioners to strike them
from the rolls, contending that the shares were exempt from taxa-
tion, but that tribunal refused to cancel the assessment. This pro-
ceeding was begun to enjoin the collection of the taxes on the rural-
credit shares, with the result that the trial court upheld the conten-
tion of plaintiffs and determined that the shares were exempt from
taxation.

A general provision of the statute is to the effect that each build-
ing and loan association shall return for assessment and taxation the
value of its office furniture and fixtures; also the value of its assets
in excess of the cash surrender value of its withdrawal shares, de-
ducting therefrom the assessed value of any real estate to which
the association holds title and in which its surplus and assets had

been invested, such real estate to be assessed as other real estate is assessed. (R. S. 79-326.) In the succeeding section it is provided, in substance, that a shareholder in such an association shall individually list for taxation the cash withdrawable value of all shares of stock held by him except those upon which there is an indebtedness to the association secured by mortgage or pledged as collateral, and the withdrawable value of such shares shall be listed at such value less any *bona fide* indebtedness secured thereby. (R. S. 79-327.)

Later, and in 1915, the legislature inaugurated a new policy and system as to rural credits, and provided for an exemption of such credits from taxation. The act was entitled:

"An act authorizing building and loan associations to issue rural-credit shares and invest the proceeds in rural-credit loans, and regulating such shares and loans." (ch. 96.)

It provided:

"Building and loan associations incorporated under the laws of the state of Kansas may issue rural-credit shares on which a definite or agreed rate of interest or dividends may be paid. All dividends thereon shall be distributed semiannually. Payment on said shares and the withdrawal of the amount credited to same or any part thereof may be made in accordance with the provisions of the by-laws of the association, but subject to the building-and-loan laws of Kansas with reference to notice of withdrawal and the amount to be used in any one month for such purposes. No interest or dividend shall be forfeited on any sum withdrawn on such shares except such interest or dividend as may have accrued since the dividend date immediately preceding the date of withdrawal. No entrance fees, premiums, fines, fees or penalties shall be charged on any such shares.

"Any association issuing such shares shall, whenever possible to do so with proper security, invest the amount to the credit of such shares in first-mortgage rural-credit loans on farms in the state of Kansas within the county in which such association is located: *Provided, however,* That any money remaining undisposed of may be invested in such securities as are now permitted for the investment of the surplus funds of building and loan associations.

"Rural-credit mortgage notes shall draw a definite rate of interest, payable semiannually, but in no instance shall the rate exceed by one and one-half per cent the average rate of interest or dividend paid by said association on its rural-credit shares. Interest on sums past due shall not exceed eight per cent per annum." (R. S. 17-1052, 17-1053, 17-1054.)

In section 6 of the act it is provided that no commission of any character shall be charged the borrower for obtaining a rural-credit loan, and in section 7 that "the amount to the credit of such rural-credit shares shall be exempt from taxation." (R. S. 17-1057, 17-1058.)

On the part of the defendant it is contended that the act does not operate to exempt the rural-credit shares, and if that were its-intended effect the exemption would violate the constitutional rule of uniformity and equality. On the other hand, plaintiff contends that the obvious purpose of the legislature was to aid agriculture and enable farmers to obtain low-rate loans, the plan being that small investors with a few hundred dollars each might put their money in these shares, which might be loaned to farmers and the loans combined in amounts that would be marketable. It is said to be in line with a measure presented in congress for a system of rural credits and investments in inexpensive farm loans which were to be exempted from taxation, and it is somewhat similar to the farm-loan act passed by congress in July, 1916. (39 U. S. Stat. 360-384; U. S. Comp. Stat., Compact Ed., §§ 9835A-9835Z.) It will be observed that the associations are made state agencies for carrying out the plan, and that no entrance fees, premiums, fines, fees or penalties may be charged on such shares. The association is enjoined to invest the credit of the shares in mortgage rural-credit loans on farms in the county in which the association is located. The mortgage notes are to draw a definite rate of interest, not exceeding one and one-half per cent of the average rate of interest or dividend to be paid on the credit shares, and not more than eight per cent should be charged on overdue loans.

It is further provided that no commission is to be charged the borrower for obtaining a rural-credit loan; and to further the plan and enable the farmers to obtain low-rate loans, these rural credits are exempted from taxation. The aim of the act is a beneficent one, manifestly enacted to advance a policy, coupled with a public interest and to accomplish a public purpose. To do so, rural credits and loans are placed in a separate class, and apparently are founded on a reasonable basis; and being for a public purpose, it was competent for the legislature to provide an exemption which does not infringe on constitutional limitations. While the constitution provides that certain property shall be exempt from taxation, it does not declare that other exemptions may not be made, but does provide that property subject to taxation shall be taxed at a uniform and equal rate. So it has been held that the enumerated exemptions must be made, but that more exemptions may be made by the legislature. (*Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234; *Francis, Treas., v. A. T. & S. F. Rld. Co.,* 19 Kan. 303; *Comm'rs of Sumner County*

*v. Wellington,* 66 Kan. 590, 72 Pac. 216; *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977.)

In the absence of constitutional limitations express or implied, the legislature has full power to grant exemptions from taxation. Within the scope of legislative power, the legislature itself is the judge of what exemptions are in the public interest and will conduce to the public welfare. The public has a deep interest in agricultural prosperity. The purpose of the exemption is obviously in the interest of the public, the classification is not unreasonable, and the act is not deemed to be in conflict with the constitution. The exemption is applied to credits, the shares are spoken of as rural credits, and the credits on such shares are to be invested in rural-credit loans. These credits are represented by the shares and we think were intended by the legislature to be exempted from taxation.

The trial court rightfully ruled that the shares were exempt, and hence the judgment is affirmed.